IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| JASON DEVON LENOIR,<br><br>Plaintiff,<br><br>vs.<br><br>MONTANA STATE; SOUTH DAKOTA; UNKNOWN C/O OF MSP INDIVIDUAL CAPACITY,<br><br>Defendants. | Cause No. CV 22-43-H-BMM<br><br><br><br>ORDER |

Plaintiff Jason Devon Lenoir filed a Complaint invoking the Montana Tort Claims Act, Mont. Code Ann. § 2-9-101 (2021), and the Fourteenth Amendment on June 27, 2022. *See* Compl. (Doc. 1 at 1.) Lenoir's second supplement (Doc. 5) clarifies that he is proceeding under 42 U.S.C. § 1983. *See* Second Supp. (Doc. 5 at 1.)

Lenoir was granted leave to proceed in forma pauperis, *see* Order (Doc. 7), but he also paid the full amount of the filing fee. *See* Docket Entry July 7, 2022.

## I. Screening

Lenoir is a prisoner. The Court must, therefore, review Lenoir's Complaint to determine whether it fails to state a claim on which relief may be granted. *See* 28

1

U.S.C. §§ 1915(e)(2)(B)(ii). A federal court must liberally construe pleadings filed by unrepresented incarcerated persons and extend an opportunity to amend where appropriate. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012). The Court must dismiss a claim when its defects cannot be cured by amendment. *See* 28 U.S.C. § 1915(e)(2).

## II. Lenoir's Pleadings

After Lenoir filed his Complaint, he filed a motion to amend and proposed amendment. (Doc. 4.) About one week later, Lenoir submitted a document containing allegations similar to, but different from, his original Complaint (Doc. 5.)

A plaintiff is entitled to amend his pleading once without leave of court. *See* Fed. R. Civ. P. 15(a)(1)(A). Lenoir's amendment (Doc. 4 at 2) adjusts his request for damages in the original complaint, and he was not required to submit a motion before making that amendment. The "supplement" containing new allegations (Doc. 5) required leave of court, but its allegations are similar and not extensive. The Court will allow the second amendment (Doc. 5) as well. Lenoir's complaint consists of all three of these pleadings. (Docs. 1, 4, 5.)

## III. Lenoir's Allegations

Lenoir states that Montana State Prison officers transported him from Montana State Prison ("MSP") to South Dakota State Prison ("SDSP"), where he

stayed for about two weeks. He alleges that, at the time he left MSP, his legal work, SCORE 5 MP3 player, and charger were in the back seat of the vehicle. *See* Compl. (Doc. 1 at 1.) Unlike his other property, which was shipped to and from SDSP, none of these items went through security to be logged. *See* (Doc. 1 at 4; Doc. 1-1 at 5, 8.)[1] When he arrived at SDSP, he was not permitted to have any property. When he returned to MSP, he regained his legal work but not the MP3 player. He concludes that either MSP or SDSP are liable for the loss of his player. *See* Compl. (Doc. 1 at 6.)

In the supplement, Lenoir asserts that he spent 15 days in disciplinary detention at MSP from January 19 to February 2, 2022. When he returned to his cell, his alarm clock was missing. He asserts that other inmates told him that "his max cell door had been opened and an inmate had stolen his alarm clock." (Doc. 5 at 2.) He contends that the action of "the prison official who opened Lenoir's door to another maximum security inmate" amounted to a "state-created danger," thus establishing a duty to protect his property. (*Id.* at 1–2.) He also asserts that at least two other inmates have lost items of personal property. (*Id.* at 14.)

Since returning to MSP from SDSP, Lenoir has purchased a new MP3 player, but he seeks compensatory damages for the lost player and the loss of its

---

[1] Some of the grievance forms Lenoir submitted with his pleadings are not legible copies.

3

use. He also seeks punitive damages of $2,000 and reimbursement for the filing fee, $402. (Doc. 1 at 2, 4–6; Doc. 4 at 2.) Lenoir seeks $5,000 from the State of Montana "[i]n light of the danger [that] Montana's negligence" posed to "Lenoir's property and legal work." (Doc. 4 at 2.) It is not clear whether he also seeks up to $10,000,000 in punitive damages. (*Id.*)

## IV. Analysis

For the following reasons, Lenoir's complaint fails to state a claim on which relief may be granted.

### A. Negligence

Negligence and accident are "[f]ar from an abuse of power." *Daniels v. Williams*, 474 U.S. 327, 332 (1986). "To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law." *Id*. Lenoir has no recourse under 42 U.S.C. § 1983 for a negligent act resulting in loss of his property.

The Court can entertain claims under state law, *see* 28 U.S.C. § 1367(a), but will not if all claims rooted in federal law are dismissed. *See* § 1367(c)(3), (d).

### B. Procedural Due Process

Jail officials must provide due process before they deprive inmates of property pursuant to policies or rules. *See, e.g.*, *Shinault v. Hawks*, 782 F.3d 1053, 1057 (9th Cir. 2015). It is impossible to provide due process before an unexpected

4

and unauthorized deprivation of property, such as might be caused by loss, accident, or theft. When policy is not the reason for depriving an inmate of his property, the constitutional guarantee of due process is satisfied if an adequate *post*-deprivation remedy is available to the inmate. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see also, e.g.*, *Zinermon v. Burch*, 494 U.S. 113, 129–130 (1990); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). The Montana Tort Claims Act, Mont. Code Ann. §§ 2-9-101, *et seq.*, provides just such a remedy—the process that is constitutionally due. That remedy is adequate even if it does not provide the same type or extent of relief as an action under 42 U.S.C. § 1983 would. *See Hudson*, 468 U.S. at 531.

The facts Lenoir alleges do not support an inference that a prison employee or official followed policy in depriving him of his alarm clock or his MP3 player. In fact, he alleges the opposite. *See* (Doc. 5 at 2–5) ("An inmate entering another's cell is absolutely against policy and procedure.") To the extent policy allows an inmate to work on the cell block, it also requires an officer to observe. *See id.* at 14–15 (quoting policy and referring to inmate swampers). Possibly an officer failed to follow policy by failing to keep watch over the inmate. If so, Lenoir alleges only negligence. Alternatively, an officer may have intentionally allowed an inmate to take Lenoir's property. If so, Lenoir does not claim that act was authorized by policy, so the right to due process is vindicated through the Montana

5

Tort Claims Act. In either case, Lenoir cannot state a claim under § 1983 for violation of his right to procedural due process.

### C. Eighth Amendment

To trigger the protection of the Eighth Amendment, an inmate must show that "a prison official's act or omission [resulted] in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Lenoir asserts that employees and officials at MSP are deliberately indifferent to substantial risks of serious harm to inmates' property. He emphasizes that his legal work could have been lost to an inmate entering his cell. *See, e.g.* (Doc. 5 at 5–9.)

The Eighth Amendment protects inmates' health and safety. It prohibits guards from using "physical force against prisoners" that is "excessive" in relation to the situation at hand. It guarantees "humane conditions of confinement"—that is, "adequate food, clothing, shelter, and medical care." It demands that guards "take reasonable measures to guarantee the safety of the inmates . . . from violence at the hands of other prisoners." *Farmer*, 511 U.S. 832–33 (internal quotation marks and citations omitted). Undoubtedly, "[b]eing violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id*. at 834 (quoting *Rhodes*, 452 U.S. at 347).

Personal items certainly can be personally meaningful and important to the

subjective well-being of an inmate serving time in prison. Occasionally losing personal property to the predations of other inmates is discouraging, frustrating, and not something an inmate should have to experience. Lenoir's allegations are not "objectively, 'sufficiently serious'" to rise to the level of cruel and unusual punishment. *See Id.* at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, (1991)). The Eighth Amendment does not condone deliberate emotional torture, but it also does not protect or guarantee inmates' subjective well-being. Occasional loss of personal property items does not remotely approach the nature of the harm an inmate must show in order to call on the protection of the Eighth Amendment.

Legal work does not implicate the Eighth Amendment. As Lenoir did not lose any of his work, he also has no claim for violation of his right to access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 348 (1996).

**D. Supervisory Liability**

To state a claim under 42 U.S.C. § 1983 against supervisory officials for inadequately training subordinates, a plaintiff must show that "the lack of training actually caused the constitutional harm or deprivation of rights." *Hyde v. City of Wilcox*, 23 F.4th 863, 874 (9th Cir. 2022); *see also Felarca v. Birgeneau*, 891 F.3d 809, 819–20 (9th Cir. 2018); *Starr v. Baca*, 652 F.3d 1202, 1207–08 (9th Cir. 2011).

Lenoir alleges that supervisory officials at MSP must not be adequately

training the officers who work in the cell blocks, because multiple inmates have lost items of personal property. *See, e.g.*, (Doc. 5 at 14.) Lenoir's allegations fail to show a violation of any of his constitutionally guaranteed rights. Therefore, he cannot state a claim against supervisory officials for failing to provide training that prevents such violations.

### E. State-Created Danger

Acknowledging that "[t]he Due Process Clause does not confer an affirmative right to governmental aid or impose a duty on the state to protect individuals from third parties," *Momox-Caselis v. Donohue*, 987 F.3d 835, 845 (9th Cir. 2021), Lenoir alleges that the act of the prison guard who opened the door of his cell amounted to a "state-created danger," thus establishing a duty to protect his property against other inmates. *See* (Doc. 5 at 1–2.)

The state-created danger doctrine does not apply to this case. The doctrine establishes only the State's duty to provide aid or protection, not the scope of the aid or protection due. Lenoir is a prisoner in state custody. The State's duty to protect him against acts of other prisoners is beyond question. The Eighth and Fourteenth Amendments define the scope and nature of its duty to Lenoir under the circumstances here. His allegations do not show a violation of either.

### F. Substantive Due Process

Finally, Lenoir asserts a violation of his Fourteenth Amendment right to

substantive due process. *See* (Doc. 5 at 1–2.) The U.S. Supreme Court, as a general matter, "has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Albright v. Oliver*, 510 U.S. 266, 271–72, 273 (1994) (internal quotation marks and citations omitted). The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity. *Id*. The U.S. Supreme Court recognized that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Id*.

Neither the Eighth nor the Fourteenth Amendment was violated by Lenoir's loss of his personal property items. The facts he alleges do not suggest that any of his other constitutional rights might have been violated. His failure to state a claim under the applicable law does not authorize resort to an "unchartered area" of constitutional law.

### G. Defendants

Lenoir does not name an individual defendant who is subject to suit under 42 U.S.C. § 1983. *See, e.g.*, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). He has asked the Court to compel Warden Salmonsen or "Montana State

Prison" to produce evidence enabling him to identify an individual responsible for admitting an inmate into his cell. *See, e.g.*, Mot. to Compel (Doc. 6 at 3.) Lenoir fails to allege facts supporting a claim against any potential defendant.

### V. Amendment and Certification

Lenoir's loss of his MP3 player and his alarm clock was unfortunate and understandably troublesome to him. As Lenoir did not lose them pursuant to policy but pursuant to failure to follow policy, the Court cannot conceive of how their loss, theft, or destruction could rise to the level of violating the United States Constitution. Montana law provides an adequate post-deprivation remedy. Neither the Eighth Amendment nor substantive due process is remotely implicated on the facts Lenoir alleges.

Lenoir could not cure the defects of his pleading by alleging additional facts or naming appropriate defendants. He would have to plead altogether different facts than he has alleged. The amended complaint is dismissed without further leave to amend.

Lenoir's property loss does not support any good-faith disagreement over whether or how the law applies to the facts. An appeal would be legally and factually unrealistic. *See* Fed. R. App. P. 24(a)(3)(A), (4)(B).

Accordingly, **IT IS ORDERED**:

1. The motion to amend (Doc. 4) is **GRANTED**. The amended complaint consists of Lenoir's original complaint, amendment, and supplement (Docs. 1, 4-1, 5).

2. The motion to compel (Doc. 6) is **DENIED**.

3. The amended complaint (Docs. 1, 4, 5) is **DISMISSED** with prejudice.

4. To the extent Lenoir seeks to raise claims under state law, the Court **DECLINES** to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3).

5. The Court **CERTIFIES** that any appeal of this disposition would not be taken in good faith.

6. The clerk shall enter, by separate document, a judgment of dismissal with prejudice.

DATED this 19th day of January, 2023.

_____
Brian Morris, Chief District Judge
United States District Court